UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. M-10-0134-82 |
| vs. | § | |
| | § | |
| **BELEAL GARCIA-GONZALEZ,** | § | |
| Defendant. | § | |

## CHILD VICTIMS' SENTENCING MEMORANDUM

Pursuant to the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771(a)(1), (4) and (8), C.M.V.M., D.L.C.V. and B.Y.C.V., Honduran citizens, sisters, minors and victims of the offenses for which Defendant Garcia-Gonzalez was convicted (hereinafter, the "Child Victims"), through their counsel and court appointed guardian ad litem ("GAL"), submit the following Sentencing Memorandum. On September 23, 2010, a jury convicted Defendant Beleal Garcia-Gonzalez of three counts of sex trafficking of minor children by force, fraud or coercion, six counts of harboring illegal aliens for purposes of commercial advantage or private financial gain and one count of conspiring to harbor illegal aliens for such purposes. Because his base offense level under the United States Sentencing Commission's Advisory Sentencing Guidelines (the "Guidelines") exceeds forty-three and because of the circumstances involved, the Child Victims ask this Court to order restitution to the Child Victims in the amounts of $563,925.46, $568,454.64 and $576,421.16,[1] and sentence Defendant Garcia-Gonzalez to life imprisonment.

---

[1] The basis for the amounts for which the Child Victims seek Restitution are set forth more fully in the Motion for Order of Mandatory Restitution and Declaration of Victim Losses for D.L.C.V., B.Y.C.V. and C.M.V.M., a copy of which will be filed concurrently with this Memorandum.

I.      FACTUAL BACKGROUND

At all times relevant to this case, Defendant Garcia-Gonzalez operated the El Paraiso Bar in Mission, Texas.  His Co-Defendants, Cesar Enrique Sarmiento-Mendoza, Jenny Beatris Parada-Ponce and Elizabeth Mendez-Vasquez all worked for Garcia-Gonzalez at the bar, while Co-Defendant Maria Luisa Vasquez-Garcia was his girlfriend.

In 2009, the Child Victims were recruited from their own living room in Honduras under the guise that they would be working at a restaurant.  Instead, the Child Victims, as young teens (ages 17, 15 and 14 when the crimes occurred) were forced to go to work at the El Paraiso, wearing sexually provocative clothes, such as tube tops, miniskirts and stiletto heels.

The Child Victims' duties were to drink beers, talk with and, when requested, dance with the customers.  They were told that they would make $20 per day and $3 per beer drank, but they were never paid.  This was problematic because the Child Victims were also required to contribute to rent and food expenses, but they had nothing to contribute.  Within days of their arrival, they were told that another way to make money was to have sexual relations with the customers.  Because they did not receive money for their daily work at the bar or the beers they drank, prostitution was the only way they could cover their most basic expenses.

C.M.V.M. and B.Y.C.V. were each forced to engage in sexual intercourse with El Paraiso patrons.  D.L.C.V., age 14, watched a bar patron negotiate with Garcia-Gonzalez for her, but she did not end up having intercourse with that individual or any other bar patron.  She was, however, forced to dance with customers who would touch her between her legs against her wishes.

When the girls weren't working at the El Paraiso, they were housed in a residence on Lusby Street in Mission, Texas, where Co-Defendants Parada-Ponce and Mendez-Vasquez also

resided. The Child Victims were not permitted to leave the Lusby Street residence unless authorized by Garcia-Gonzalez or Sarmiento-Mendoza.

The evidence presented at Defendant Garcia-Gonzalez's trial established that he was the leader of the criminal enterprise that lured these young girls to the United States under false pretenses, made them his indentured servants and coerced them to prostitute themselves and engage in other sexual acts in order to attempt to repay him. His use of force against the Child Victims included physical violence, drugs, alcohol, guns, isolation, threats of harm to their family in Honduras, and verbal and sexual assaults against the girls themselves. This criminal scheme was not a one-time, violent outburst. Rather, this was a crime that was exploited the Child Victims both as "waitresses" and prostitutes over many weeks for his own personal enjoyment and economic benefit.

On January 13, 2010, U.S. Immigration Customs and Enforcement ("ICE") agents raided the Lusby Street residence, arrested Garcia-Gonzalez and others, and took the Child Victims into protective custody. Eventually, the Child Victims were placed in the custody of the U. S. Department of Health and Human Services Office of Refugee Resettlement ("ORR") pursuant to 6 U.S.C. § 279(g)(2). In late February 2010, ORR moved the Child Victims to a social service agency in Michigan which specializes in long term foster care for unaccompanied refugee youth. The agency provides the Child Victims with 24 hour placement care, including medical care, therapeutic foster care, education and access to independent legal counsel.

Child prostitution is a gross violation of the Child Victims' rights and dignity. *See generally,* Willis & Levey: *Child Prostitution: global health burden, research needs, and interventions*: THE LANCET, V359(9315), PG 1417-1422 (2002). Researchers have found that the impacts of child sex trafficking on the victim "**compare to or exceed symptoms experienced**

**by torture victims"** (emphasis added).  *See* Cathy Zimmerman et al., *Stolen Smiles: a summary report on the physical and psychological health consequences of women and adolescents trafficked in Europe* p.16 (2006).  In addition, the Child Victims will likely suffer serious long term psychological harm, including anxiety, depression and behavior disorders.  *See* Willis & Levey, pg 1419.  The objectification and contempt aimed at the Child Victims can become internalized and solidified "resulting in self loathing that is long lasting and resistant to change." *See* Farley et. al, *Prostitution and Trafficking in Nine Countries: An Update on Violence and Posttraumatic Stress Disorder*", JOURNAL OF TRAUMA PRACTICE, Vol. 2, No. 3/4, p 33-74 at 58 (2003).   Prostituted children are also at high risk of suicide.  *See* Willis & Levey, pg 1419.

They are also at high risk for post-traumatic stress disorder.  *Id, see also:* Melissa Farley et al., *Prostitution in Five Countries: Violence and Post-Traumatic Stress Disorder (South Africa, Thailand, Turkey, USA, Zambia)*, FEMINISM & PSYCHOLOGY Volume 8(4):405-426 (1998).  Researchers have concluded that these mental health problems pose serious challenges to effective treatment and reintegration of child trafficking victims into society. *See* Willis & Levey, at 1419.

In short, the Child Victims will continue to suffer from the effects of the Defendant Garcia-Gonzalez's criminal acts for many years to come.  Consequently, the Child Victims recommend a term of life imprisonment for Defendant Garcia-Gonzalez.

II.  ADVISORY GUIDELINE CALCULATION

Below is a summary of the Child Victims' Guidelines calculation:

| Offense Levels and Adjustments | Beleal Garcia-Gonzalez |
|---|---|
| 1.  The base offense level is 34 pursuant to U.S.S.G. § G1.3(a)(1). | 34 |
| 2.  Because the Child Victims were under Defendant Garcia-Gonzalez's custody, care or supervisory control, 2 levels must | 2 |

- 4 -

ID\LVD - 019956/0771

| | | |
|---|---|---|
| | be added pursuant to § 2G1.3(b)(1) | |
| 3. | Because the Child Victims were unduly influenced by Defendant or other participants in the scheme to engage in prohibited sexual conduct, 2 levels must be added pursuant to § 2G1.3(b)(2). | 2 |
| 4. | Because Counts One through Three included a sex act or sexual contact, 2 levels must be added pursuant to § 2G1.3(b)(4) | 2 |
| 5. | Because the Child Victims were undocumented aliens, they were vulnerable victims (unrelated to age) and 2 levels must be added pursuant to § 3A1.1(b)1. | 2 |
| 6. | Because Defendant Garcia-Gonzalez was an organizer or leader of criminal activity that involved five or more participants, 4 levels must be added pursuant to § 3B1.1.(a). | 4 |
| 7. | Because Counts One, Two and Three, the Transportation of Minors to Engage in a Commercial Sex Act counts, involved different minors, 3 levels must be added pursuant to § 2G1.3(d)(1) and § 3D1.4(a). | 3 |
| 8. | Total Offense Level | 49 |

With the above calculations, the total adjusted offense level for Defendant Garcia-Gonzalez is 49.

The resulting guideline range for Defendant Garcia-Gonzalez, based on an offense of 43 or above, is life imprisonment.

### A. **Force, Fraud or Coercion**

Pursuant to U.S.S.G. § 2G1.3(a)(1), the defendant's base offense level is 34 if he or she was convicted under 15 U.S.C. § 1591(b)(1). Section 1591(b)(1) provides:

> "(b) The punishment for an offense under subsection (a) is –
>
> (1) if the offense was effected by force, fraud or coercion…, by a fine under this title and imprisonment for a term of years not less than 15 or for life;"

18 U.S.C. § 1591(e)(1).

- 5 -

> For purposes of Section 1591(b)(1), the term "coercion" includes:
>
> (a) threats of serious harm or physical restraint against any person;
>
> (b) any scheme, plan or pattern intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint against any person; or"

18 U.S.C. § 1591(e)(2).

The term "serious harm" means any harm whether physical or nonphysical, including psychological, financial or reputational harm, that is sufficiently serious, under all the circumstances to compel a reasonable person of the same background and in the same circumstances to perform or continue performing sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(4).

Here, the Child Victims testified that Defendant Garcia-Gonzalez threatened them with guns and harm the Child Victims' family in Honduras if they ever tried to escape. Additionally, the Child Victims were clearly lured to the United States under fraudulent pretenses. Once in the United States, they were only allowed to be at the El Paraiso Bar or the Lusby Street residence and were effectively under guard by one of the venture's participants at all times.

The jury found in the affirmative with the respect to the special issue of force, fraud or coercion on Counts One, Two and Three, the sex trafficking counts. Consequently U.S.S.G. § 2G1.3(a)(1) applies and Defendant Garcia-Gonzalez's base offense level is 34.

### B. **Specific Offense Characteristics**

#### 1. **The Child Victims Were Entrusted To Defendant's Custody, Care Or Supervisory Control**

U.S.S.G. § 2G1.3(b) sets forth a series of offenses characteristics, which if applicable, result in base offense level increases. U.S.S.G. § 2G1.3(b)(1) provides:

DALLAS\115277.1
ID\LVD - 019956/0771

> If (A) the defendant was a parent, relative or legal guardian or (B) the minor was otherwise in the custody, care or supervisory control of the defendant, increase by 2 levels.

The Application Note for U.S.S.G. 2G1.3(b) states that this subsection is intended to have "broad application and includes offenses involving a victim less than 18 years of age entrusted to the defendant, whether temporarily or permanently." *See* Application Note 2(A). The Child Victims were under Defendant Garcia-Gonzalez's care, custody and supervisory control while they were in the United States until ICE rescued them on January 13, 2010. Accordingly, his base offense level must be increased by 2 levels from 34 to 36.

### 2. **A Participant In The Scheme Unduly Influenced The Child Victims To Engage In Prohibited Sexual Conduct**

U.S.S.G. § 2G1.3(B)(2) provides:

> If (A) . . . ; or (B) a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels."

The term "prohibited sexual conduct" means "any sexual activity for which a person can be charged with a criminal offense." *See* Application Note 1 to § 2A3.1. In determining whether a participant "unduly influenced" the minor to engage in such conduct, "the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior. The voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring." *See* Application Note 3(B), - Undue Influence, to § 2G1.3.

Here, the Child Victims were undocumented aliens in a foreign country, thousands of miles from home, intentionally kept isolated from family in Honduras, and heavily indebted to Defendant Garcia-Gonzalez. Their only way of repaying him was to follow his orders to have

- 7 -

sex with El Paraiso Bar patrons. The 2 level enhancement under U.S.S.G. § 2G1.3(b)(2) applies and increases Defendant Garcia-Gonzalez's base offense level from 36 to 38.

### 3. The Offense Involved The Commission Of A Sex Act Or Sexual Contact

U.S.S.G. 2G1.3(b)(4) provides for a 2 level increase if "the offense involved the commission of a sex act or sexual contact." The term "sexual act" includes any contact between the penis and the vulva, any contact between the mouth and the penis, and any penetration of the genital opening of another with an intent to arouse or gratify the sexual desire of any person. *See* Application Note 1 to § 2G1.3 and 18 U. S. C. § 2246(2). The term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, breast, inner thigh of any person with an intent to arouse or gratify the sexual desire of any person. *See* Application Note 1 to § 2G1.3 and 18 U.S.C. § 2246(3). Both C.M.V.M. and B.Y.C.V. testified to engaging in sexual relations with bar customers. All of the Child Victims testified to being touched in a sexual manner by bar customers.

As a result, Defendant Garcia-Gonzalez's base offense level is increased from 38 to 40.

### C. **The Child Victims Were Unusually Vulnerable Victims Unrelated To Their Age**

U.S.S.G. 3A1.1(b)(1) provides:

> If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels.

Application Note 2 to § 3A1.1(b) states that the above subsection is not to be applied "if the factor that makes the person a victim vulnerable is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was <u>unusually</u> <u>vulnerable</u> for <u>reasons</u> <u>unrelated</u> <u>to</u> <u>age</u>" (emphasis ours).

In this instance, the Child Victims were unusually vulnerable because they were undocumented, far from their home, intentionally isolated from their family in Honduras, threatened with force and violence and heavily indebted to the Defendant, without the ability to repay unless they prostituted themselves in accordance with his instructions.

Consequently, § 3A1.1(b) applies and Defendant's base offense level is increased from 40 to 42.

### D. **Aggravating Role – Organizer Or Leader Of Criminal Activity That Involved Five Or More Participants Or Was Otherwise Extensive**

U.S.S.G. § 3B1.1(a) provides for a 4 level increase if the defendant was "an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." A "participant" is a person who is criminally responsible for the commission of the commission of the offense, but need not have been convicted. *See* Application Note 1 to § 3B1.1.

Application Notes 3 and 4 to § 3B1.1 state:

> 3. In assessing whether an organization is "otherwise extensive," all person involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.
>
> 4. In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

- 9 -

The criminal activity involved in these offenses was clearly "extensive" win the meaning of § 3B1.1. Defendant Garcia-Gonzalez arranged for the Child Victims to be smuggled into the U.S. and advanced the money to pay for their transportation. Garcia-Gonzalez retained the balance of Child Victims' earnings from prostitution after applying a portion to their indebtedness. The venture was extensive[2] in that it involved arranging for the transportation of the Child Victims from Honduras through Mexico, smuggling them into the U.S., prostituting them to El Paraiso Bar patrons, housing them at the Lusby Street residence and employing Defendant Sarmiento-Mendoza and others to guard them.

The 4 level enhancement pursuant to U.S.S.G. § 3B1.1(a) increases Defendant Garcia-Gonzalez's base offense level from 42 to 46.

E. **Multiple Counts And Determining The Combined Offense Level**

Because at least three minors were transported for purposes of engaging in a commercial sex act or prohibited sexual conduct, there are three groups of closely related counts in United States v. Beleal Garcia-Gonzalez et al.: (1) Counts One, Four and Five relating to C.M.V.M., (2) Counts Two, Four and Six relating to D.L.C.V., and (3) Counts Three, Four and Seven relating to B.Y.C.V.

U.S.S.G. § 2G1.3(d)(1) – Special Instruction, states:

> If the offense involved more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the persuasion, enticement, coercion, travel or transportation to engage in a commercial sex act or prohibited sexual conduct of each victim had been contained in a separate count of conviction."

---

[2] Three of the Defendant were indicted and convicted on one or more of the sex trafficking counts, while all five Defendants were indicted and convicted of one or more of the counts relating to harboring the Child Victims for commercial advantage or private financial gain.

- 10 -

In this case, of course, Defendant Garcia-Gonzalez was convicted of separate counts of sex trafficking relating to each of the Child Victims, namely, Count One relating to C.M.V.M., Count Two relating to D.L.C.V. and Count Three relating to B.Y.C.V.

Thus, for purposes of determining the combined offense level pursuant to § 3D1.4, the groups of offenses relating to each victim count as one unit or a total of three units. As a result, Defendant Garcia-Gonzalez's base offense level is increased from 46 to 49.

### F. Criminal History

The Child Victims do not know whether Defendant Garcia-Gonzalez has any prior criminal convictions.

As a result, the Child Victims assume that the Defendant falls within Criminal History Category I. Pursuant to Application Note 2 to the Chapter Five Sentencing Table, Defendant Garcia-Gonzalez's base offense level of 49 is to be treated as an offense level of 43.

The Sentencing Guideline Range for a base offense level of 43 is life imprisonment.

### III. ANALYSIS OF FACTORS UNDER 18 U.S.C. § 3553

The Child Victims submit that a sentence of life imprisonment is needed to reflect the seriousness of Defendant Garcia-Gonzalez's offenses, to provide just punishment for these offenses, to deter future similar criminal conduct by others and to promote respect for the law.

### A. Request for No Contact

During trial, the Child Victims testified that the Defendant threatened to harm their family if they ever escaped. The Defendant knows where the Child Victims' family lives. Accordingly, the Child Victims also request that Defendant Garcia-Gonzalez not be permitted to contact either the Child Victims or their families directly or indirectly as part of his sentence.

## **CONCLUSION**

For all of these reasons, the Child Victims ask that the Court sentence Defendant Garcia-Gonzalez to a term of life imprisonment, order that Defendant have no contact with the Child Victims or their families, and order restitution in the amounts of $563,925.46, $568,454.64 and $576,421.16 to the Child Victims.

        Respectfully submitted,

        Dykema Gossett PLLC

        HEIDI NAASKO, GUARDIAN AD LITEM

        /s/ Katarzyna "Kathy" Brozynski
        Katarzyna "Kathy" Brozynski
        *Attorney-In-Charge*
        SBN: 24036277
        kbrozynski@dykema.com
        DYKEMA GOSSETT PLLC
        Comerica Bank Tower
        1717 Main Street, Suite 4000
        Dallas, Texas 75201
        (214) 462-6400 – Telephone
        (214) 462-6401 – Facsimile

        Heidi Naasko
        MI Bar No. P58783
        hnaasko@dykema.com
        DYKEMA GOSSETT PLLC
        2723 South State Street, Suite 400
        Ann Arbor, MI 48104
        (734) 214-7660 – Telephone
        (734) 214-7696 -- Facsimile

        **ATTORNEYS FOR THE GAL AND CHILD VICTIMS**

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of December 2010, a copy of the foregoing was served upon all counsel of record via the court's electronic filing system.

/s/ Katarzyna "Kathy" Brozynski
Katarzyna "Kathy" Brozynski
*Attorney-In-Charge*
SBN: 24036277
kbrozynski@dykema.com
DYKEMA GOSSETT PLLC
Comerica Bank Tower
1717 Main Street, Suite 4000
Dallas, Texas  75201
(214) 462-6400 – Telephone
(214) 462-6401 – Facsimile

Heidi Naasko
MI Bar No. P58783
hnaasko@dykema.com
DYKEMA GOSSETT PLLC
2723 South State Street, Suite 400
Ann Arbor, MI  48104
(734) 214-7660 – Telephone
(734) 214-7696 -- Facsimile

**ATTORNEYS FOR THE GAL AND CHILD VICTIMS**